UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY NELL FREEMAN, | No. C-11-3007 EMC |
| Plaintiff, | **RELATED TO** |
| v. | No. C-11-3542 EMC |
| ABC LEGAL SERVICES, INC., *et al.*, | No. C-11-3805 EMC<br>No. C-11-3824 EMC |
| Defendants. | No. C-11-5152 EMC<br>No. C-12-0624 EMC<br>No. C-12-0642 EMC |
| AND ALL RELATED ACTIONS. | No. C-12-0644 EMC<br>No. C-12-0678 EMC<br>No. C-12-1693 EMC<br>No. C-12-1696 EMC<br>No. C-12-1904 EMC<br>No. C-12-1911 EMC<br>No. C-12-1914 EMC |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS, MOTIONS TO STRIKE, AND MOTIONS TO DISMISS**

## I. INTRODUCTION[1]

Plaintiffs in each of these individual actions have filed suit against ABC Legal Services, Inc., ("ABC"), and individual process servers who worked for ABC. ABC is in the business of filing and processing legal forms. Each Plaintiff raises claims against ABC and the process servers for alleged instances of "sewer service." *See Freeman v. ABC Legal Services Inc.*, 827 F. Supp. 2d 1065, 2011 WL 6090699, at *1 n.1 (N.D. Cal. 2011) ("Sewer service is defined as 'failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment is entered against him.'") (quoting *Spiegel v. Judicial Atty. Servs.*, 2011 WL 382809, 2011 U.S. Dist. LEXIS 9350 (N.D. Ill. Feb. 1, 2011)). Plaintiffs assert claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 ("RFDCPA"), and California Business and Professions Code § 17200 ("UCL"). Currently pending before the Court are Defendant ABC's motions for judgment on the pleadings, motions to dismiss, and motions to strike Plaintiffs' injunctive relief claims under § 17200. *See* Mot., 11-3007, Docket No. 61.

## II. DISCUSSION

ABC styles its motions under various Federal Rules of Civil Procedure. First, it states that it brings a Rule 12(c) motion for partial judgment on the pleadings as to Plaintiffs' claims for injunctive relief and violation of Cal. Bus. & Prof. Code § 17200 ("UCL"). Docket No. 61 at 1-2. Second, it states that it brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter

---

[1] This is the lead case in a collection of related cases regarding the same allegations of "sewer service" by ABC Legal Services. Defendant's motion in the lead Freeman matter is at Docket No. 61. Defendant ABC has filed the same or substantially the same motion or joinder in each of the following cases: *Walker*, 12-678 EMC (Docket No. 9); *Paule*, 12-642 EMC (Docket No. 9); *Sparacino*, 12-624 EMC (Docket No. 9); *Wyckoff*, 12-644 EMC (Docket No. 9); *Clohan*, 12-1696 EMC (Docket No. 7); *Rosales*, 11-3805 EMC (Docket No. 34); *Barreto*, 11-5152 EMC (Docket No. 20); *Jones*, 11-3824 EMC (Docket No. 36); *Ansari*, 11-3542 EMC (Docket No. 40); *Brown*, 12-1911 EMC (Docket No. 12); *Dohn*, 12-1914 EMC (Docket No. 14); *Kamin*, 12-1693 EMC (Docket No. 14); and *Younger*, 12-1904 EMC (Docket No. 13). The 2012 cases have joined in the *Walker* (12-678) motions, and the 2011 cases have joined in the *Freeman* (11-3007) cases.

Because the factual issues relevant to the motions are largely identical between the cases (except as otherwise stated), the Court refers generically to "Plaintiffs" and "Defendant" in this Order, and all docket citations are to the *Freeman* matter unless otherwise noted. Most cases also name the individual process server as a defendant, but only ABC has filed and joined each of the pending motions.

jurisdiction, on the basis that there is no case or controversy regarding Plaintiffs' UCL claim. *Id.* at 2. Third, for the cases in which ABC has not yet filed responsive pleadings, ABC substitutes a 12(b)(6) motion for the 12(c) motion described above, and also asserts a Rule 12(f) motion to strike Plaintiffs' injunctive relief claims.

The Court's subject matter jurisdiction over these actions as a whole is not in dispute in these cases because each Plaintiff asserts claims arising under federal law, namely the FDCPA. ABC does not challenge those claims in its motions. Instead, ABC challenges Plaintiffs' standing to seek injunctive relief under the UCL or any other claim. Further, because Plaintiffs seek only injunctive relief under the UCL, ABC argues they have failed to state a UCL claim. Accordingly, however styled, the Court shall address the following legal issues:

(1) Whether Plaintiffs have standing and have stated a claim under the UCL; and

(2) Whether injunctive relief is available under any of Plaintiffs' claims.

A. Legal Standard

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Here, ABC asserts only a facial challenge; therefore, the Court must accept all allegations of fact in the complaint as true. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003) (citing *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001)).

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not

contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

Under Rule 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "'functionally identical'" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011).

Under Rule 12(f), "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). As indicated by the language of the rule, "'[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial....'" *Id.* When ruling on a motion to strike, a court views the pleading under attack in the light most favorable to the nonmoving party. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal.2005). Courts generally disfavor motions to strike because striking is such a drastic remedy. *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (stating that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted'").

B.  <u>Standing under the UCL</u>

The parties disagree as to both the legal standard for UCL standing and its application to Plaintiffs. ABC argues that the constitutional standing requirement for injunctive relief applies, and

that Plaintiffs cannot demonstrate a threat of future harm. Plaintiffs argue they need only satisfy the statutory UCL standing requirements in §17204, and that regardless, they have shown a likelihood of future harm.

### 1. Legal Standard

At a constitutional minimum, standing requires the party invoking federal jurisdiction to show that it has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted). In the instant case, ABC only challenges Plaintiffs' standing to seek injunctive relief under the UCL and other causes of action. "[W]here, as here, [Plaintiffs] seek declaratory and injunctive relief, they must demonstrate that they are 'realistically threatened by a repetition of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir.2001) (emphasis in original) and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A plaintiff 'bears the burden of showing that he has standing for each form of relief sought.'" *Bowler v. Home Depot USA Inc.*, C-09-05523 JCS, 2010 WL 3619850, at *3 (N.D. Cal. Sept. 13, 2010) (quoting *Summers v. Earth Inst.*, 555 U.S. 488, 493 (2009); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001)).

The UCL statutory standing requirements differ from standing requirements in federal court. Cal. Bus. & Prof. Code § 17204 provides that a plaintiff "who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to seek relief under the UCL. Only two forms of relief are available: restitution and/or an injunction. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citations omitted). Plaintiffs seek only injunctive relief. *See* Opp., Docket No. 66, at 8 ("The only UCL remedy sought by Plaintiff in this case is an injunction."). Although courts have previously debated the question, it is now settled under California law that a plaintiff need not prove eligibility for restitution in order to have standing to seek injunctive relief. *See Pom Wonderful LLC v. Coca-Cola Co.*, --- F.3d ----, 10-

55861, 2012 WL 1739704, at *6 (9th Cir. May 17, 2012) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310 (Cal. 2011); *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758 (Cal. 2010)). In California state courts, a Plaintiff may seek an injunction if he merely satisfies the harm requirements of § 17204, "whether or not restitution is also available." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) (citing *Clayworth v. Pfizer, Inc.*, 49 Cal.4th at 789-80 ("If a party has standing under section 17204 . . . , it may seek injunctive relief under section 17203.")). In short, standing for injunctive relief under § 17204 does not require the showing mandated by *Lujan* and *Lyons*.

Plaintiffs argue that the § 17204 standard should apply here, as the California Supreme Court has held that once a plaintiff satisfies § 17204, which ABC does not dispute Plaintiffs satisfy, she may seek injunctive relief under the UCL. However, in federal court, a plaintiff must still demonstrate Article III standing to seek injunctive relief, even if she would otherwise have standing in state court. In *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004), the Ninth Circuit held that "'a plaintiff whose cause of action [under § 17204] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury' to establish Article III standing," quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir.2001) and citing Cal. Bus. & Prof. Code § 17204).) *See VonGrabe v. Sprint PCS*, 312 F. Supp. 2d 1313, 1323 (S.D. Cal. 2004) (same). In *Hangarter*, the court concluded that the plaintiff had no standing to seek injunctive relief under the UCL because he "currently has no contractual relationship with Defendants and therefore is not personally threatened by their conduct." 373 F.3d at 1022; *see also Krzyzanowsky v. Orkin Exterminating Co., Inc.*, C 07-05362 SBA, 2009 WL 481267, at *14 (N.D. Cal. Feb. 24, 2009) (holding that because the plaintiff "has no contract with Orkin, nor has produced any evidence he intends to obtain one in the future, he cannot show that he is realistically threatened by a repetition of Orkin's conduct"). Thus, under *Hangarter*, UCL plaintiffs must still satisfy federal constitutional standing requirements, including those pertinent to injunctive relief.[2]

---

[2] Plaintiffs' reference to *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, is inapposite. That case, which noted that "[a] business act or practice need not be an ongoing pattern of conduct" in order to qualify as an unlawful practice, did not address the issue of standing but rather the Rule 12(b)(6) standard for stating a UCL claim. 479 F.3d 1099, 1107 n.9 (9th Cir. 2007). In any event,

Plaintiffs point out that some cases appear to evaluate UCL standing without regard to constitutional standing for injunctive relief, even where it is questionable whether constitutional standing was present. *See, e.g.*, *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1122 (N.D. Cal. 2009) (finding that "Plaintiff will have standing if she alleges a loss of money or property in which she had prior possession or a vested legal interest, even if that loss is not eligible for restitution," although proposed allegations concerned only past efforts to wrongfully collect a debt which had since been dismissed from state court); *Fulford v. Logitech, Inc.*, No. C 08-2041, 2009 WL 1299088, at *2 (N.D. Cal. May 8, 2009) (finding standing where "Fulford has alleged he 'purchased the H1000 ... for approximately $200' and that had he 'known that the H1000 Remote[ ] did not have Z-Wave capability, [he] would have paid less for [it] or purchased [a] different remote control device[ ]'"). It is possible that the litigants in these cases only raised the issue of statutory, rather than constitutional standing. Significantly, constitutional standing was not addressed in these cases.

Other cases similarly address only UCL standing, but the fact patterns suggest constitutional standing would not have been a concern. *See, e.g.*, *White v. Trans Union LLC*, 462 F. Supp. 2d 1079, 1080, 1084 (C.D. Cal. 2006) (finding UCL standing where plaintiffs alleged on behalf of a class that TransUnion had "employ[ed] credit reporting practices that they allege falsely declare their discharged debts to be 'due and owing' and thereby inappropriately taint Plaintiffs' credit reports"); *So. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1065, 1069 (C.D. Cal. 2005) (finding UCL standing in housing discrimination complaint for failure to provide disability accommodations "based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here," where plaintiff moved out due to the problem but was still leasing her unit to other tenants).

In contrast, other cases have explicitly applied the constitutional, rather than UCL, standing requirement. *Trew v. Volvo Cars of N. Am., LLC*, CIV-S-051379DFLPAN, 2006 WL 306904, at * (E.D. Cal. Feb. 8, 2006) (denying motion to dismiss where current Volvo owners alleged that defective parts had caused them to overpay for their cars and would cause their cars to malfunction,

---

"CRST's complaint contained the assertion that Werner's hiring of Chatman and Spencer were but two examples of an ongoing course of conduct." *Id.*

7

but noting that the standing inquiry depended on Article III); *Richards v. Ernst & Young LLP*, C08-4988 JF (HRL), 2010 WL 682314 (N.D. Cal. Feb. 24, 2010) (citing *Hangarter* and finding the plaintiff "lacks standing to seek such relief because she no longer works for E & Y and therefore is not threatened personally by the alleged labor code violations"); *Delodder v. Aerotek, Inc.*, 2009 WL 3770670, *2 (C.D. Cal. Nov. 9, 2009) ("The [c]ourt finds that plaintiffs lack standing to seek prospective relief under the UCL because plaintiffs do not dispute that they are no longer employees of defendant, and thus, they cannot demonstrate a 'real or immediate threat of irreparable injury' by defendants' employment practices.").

Despite the variousness among lower courts, Ninth Circuit authority is clear on the question. The Ninth Circuit's recent opinion in *Pom Wonderful LLC* does not change this conclusion. In that case, the court merely confirmed the California Supreme Court's holding that a plaintiff need not demonstrate eligibility for restitution in order to seek injunctive relief. 2012 WL 1739704 at *6. However, that a plaintiff need not show she could obtain restitution does not mean she is absolved from also demonstrating that she is entitled to seek an injunction. The court only held that restitution does not operate as a separate bar to standing. *See also Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (Fed. Cir. 2011) ("[T]he availability of injunctive relief under section 17203 is not contingent on a party's ability to plead an injury compensable by restitution.").[3] *Pom Wonderful LLC* did not overrule *Hangarter*'s requirement that federal standing rules apply to a state UCL claim for injunctive relief.

Accordingly, the constitutional standing requirement applies, and Plaintiffs must meet it in order to assert their UCL claims for injunctive relief.

---

[3] Similarly, although the Federal Circuit did not consider constitutional standing requirements in *Allergan*, it was clear on the facts of that case that the only bar to plaintiffs' standing was their ineligibility for restitution, as they complained of an ongoing practice that continued to injure them specifically. *Allergan*, 640 F.3d at 1378-79 (asserting UCL claim based on ongoing patent infringement); *see also Pom Wonderful LLC*, 2012 WL 1739704 at *1 (asserting claims based on juice competitor's misleading product labels). The Court does not read these cases as suggesting that the federal standing requirements do not apply to a UCL claim.

2. <u>Application to this Case</u>

In the instant case, it is a close call whether Plaintiffs meet the standing requirement for injunctive relief. Although Plaintiffs adequately allege past damages, they must allege facts sufficient to show a "real and immediate threat of repeated injury" in order to seek injunctive relief in federal court. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *Armstrong*, 275 F.3d at 860-61 (plaintiff must show she is "realistically threatened by a repetition of the violation"); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

> In *Armstrong*, the Ninth Circuit described two ways in which a plaintiff can show that an injury is likely to recur. First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury "stems from" that policy. 275 F.3d at 861. "[W]here the harm alleged is directly traceable to a written policy, there is an implicit likelihood of its repetition in the immediate future." *Id.* (citation and quotation omitted). Second, the plaintiff may demonstrate that the harm is part of a "pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights." *Id.* (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir.1985)). "[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement." *Id*.

*Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 850 (N.D. Cal. 2011). Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea*, 414 U.S. at 496, "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Lyons*, 461 U.S. at 103. Indeed, "a single incident is insufficient to establish a likelihood of future injury under Ninth Circuit law." *Apilado v. N. Am. Gay Amateur Athletic Alliance*, 792 F. Supp. 2d 1151, 1164-65 (W.D. Wash. 2011) (citing *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999)).

Here, although it is a close call whether Plaintiffs have adequately alleged a realistic threat of future harm, the Court concludes that their current allegations fall short. On the one hand, Plaintiffs have alleged widespread illegal practices by ABC. In its previous order, the Court has already found that Plaintiff Freeman alleged a practice of unlawful conduct by ABC:

> [T]he Court finds that Plaintiff has sufficiently alleged that Defendants engaged in the practice of "sewer service" so as to forfeit the process server exemption. As alleged, ABC advertises its process service to

> debt collectors and then induces process servers, like Smith, to file false Proofs of Service, by paying them substantially less for service that is not complete. FAC ¶ 62. Plaintiff also alleges that Smith provides ABC with his facsimile signature, and ABC used this to produce the fraudulent Proof of Service of Summons like the one that CIR paid for. FAC ¶ 28. Plaintiff further alleges that ABC knew that fraud, perjury, and breach of official duty were being committed by Smith, and ABC approved and encouraged this conduct by continuing to employ Smith and give him process server assignments even after learning he had engaged in "sewer service." FAC ¶¶ 29, 37–39. Although just one instance of "sewer service" is arguably enough to forfeit the exemption, Plaintiff's allegation that his has occurred over forty times makes the contention that this was a fraudulent operation much more plausible. FAC ¶ 67.

*Freeman v. ABC Legal Services Inc.*, 827 F. Supp. 2d 1065 (N.D. Cal. 2011). The Court also noted that Plaintiff had developed evidence of the falsity of some of Defendants' paperwork:

> Plaintiff pointed out that Defendants' record on June 19, 2010, showed Defendant Smith simultaneously completed two different serves, in two different locations. Tanabe Decl., Docket No. 31, at 14. Mr. Tanabe's declaration also stated that after replicating Defendant Smith's route, he found it would have been impossible to complete the alleged number of serves on June 10, 2010. Tanabe Decl. at 5.

*Id*. Thus, based on the Court's findings to date, one could argue that Plaintiffs have adequately alleged a pattern of officially sanctioned conduct, if not a written policy, that makes their fear of future harm plausible so as to confer standing to seek injunctive relief. Indeed, beyond the allegations to which the Court has already referred, Plaintiffs allege that ABC maintains digital copies of its process servers' signatures so that it can "manufacture process server returns" that appear to comply with the law. FAC ¶ 28. Plaintiffs also allege that ABC gave assistance and encouragement to its process servers' evasion of the law, FAC pp 29, and that they ratified their conduct, FAC ¶¶ 38-39. Specifically, Plaintiffs allege ABC "knowingly promotes the use of false process server returns" through the way that it composes and sells those returns. FAC ¶ 62.

On the other hand, Plaintiffs' current allegations establish only that ABC will (allegedly) harm many people, but not necessarily that it will harm *Plaintiffs* again. *See, e.g.*, *Hodgers-Durgin*, 199 F.3d at 1045 (the fact that unnamed class members had been subjected to the unlawful practice multiple times and might themselves have standing for injunctive relief did not confer standing on named class members, who had only experienced the harm once). For example, Plaintiffs allege in

1  opposition that "[g]iven ABC LEGAL's dominance in the market for process serving in the San
2  Francisco Bay Area, it is neither hypothetical nor speculative that future defendants in collection
3  suits (including the Plaintiff herein) will be victimized by Defendants' 'sewer service' practices."
4  Opp., Docket No. 66, at 7.  Plaintiffs also allege that ABC has engaged in sewer service over forty
5  times, FAC ¶ 67, and point to each other's complaints as evidence that the practice is common.
6  However, Plaintiffs have alleged no facts pertinent to ABC's purported dominance in the process
7  serving market, nor have they alleged any facts to show that *they personally* have a reasonable threat
8  of facing future debt collection efforts.  Thus, even given Plaintiffs' allegations of ABC's routine
9  and deliberate practices, this is still insufficient to show that *these* Plaintiffs face a credible threat of
10 being subjected to such practices in the future.

11      In *Armstrong*, the court found that a class of disabled prisoners and parolees had adequately
12 alleged standing by showing that the Board employed a discriminatory written policy, adopted
13 practices that "routinely deprives disabled prisoners and parolees of their rights under the ADA,"
14 and that the treatment of the class as a whole, including the fact that "named plaintiffs suffered
15 repeated acts of discrimination," demonstrated a likelihood of future harm.  275 F.3d at 863-64.
16 However, the policies and practices at issue in that case plainly applied to the named plaintiffs
17 specifically; there was no question as to whether they would be subject to the Board's actions.
18 Indeed, other cases have distinguished *Armstrong* when individuals could not show that they
19 *personally* would be subject to the illegal conduct again.  For example, in *Beecham v. City of W.*
20 *Sacramento*, the court found that while "Plaintiffs argue there is a 'very significant possibility' that
21 they could be subjected to another illegal high-risk stop by the West Sacramento Police Department
22 ("WSPD" or the "Department") given the Department's general practice to conduct a high-risk stop
23 whenever a car 'fails to yield,'" this was insufficient to allege a threat of future harm to the plaintiff.
24 2:07CV01115JAMEFB, 2009 WL 2379983, at *1 (E.D. Cal. July 30, 2009).  In *Krzyzanowsky*, the
25 court similarly distinguished class action cases as less probative of the standing analysis for
26 individuals.  2009 WL 481267, at *14.  Moreover, the court concluded that even setting aside the
27 differences between class actions and individual cases, and even "assum[ing] that [defendant] had an
28 ongoing written policy or official practice which directly and actually injured [plaintiff] in the past,"

1  such a policy or practice remained insufficient because the plaintiff had alleged no facts to show that
2  he might contract for the defendant's services in the future and therefore be subject to its policies
3  and practices. *Id*.

4　　　The problem for Plaintiffs is that, as currently alleged, whether they are subject to ABC's
5  purportedly unlawful conduct in the future depends largely on undefined contingencies.  A
6  defendant's practices, even if allegedly routine, must still distinguish the plaintiff from "any other
7  citizen" in order for the plaintiff to demonstrate entitlement to an injunction.  *Lyons*, 461 U.S. at
8  111.  As alleged, whether Plaintiffs face repeated harm is largely outside their control, as it depends
9  solely on whether someone sues them and happens to use Defendant ABC to serve them with
10 process.  It is also uncertain, as debt collection litigation is not something one could conclude,
11 without further facts, that an average person encounters regularly.

12　　　Here, no Plaintiff alleges, *e.g.*, that he or she has additional consumer debt that has or may be
13 sent to collection, that he or she has been a defendant in other lawsuits in the past or has a
14 reasonable prospect of being subjected to additional litigation in the near future.  Nor have Plaintiffs
15 alleged ABC's share of the process server market is such that if they were sued again there is a
16 reasonable likelihood that the creditor's attorneys would employ ABC.  Thus, even if Defendants'
17 practices are routine, the Court cannot conclude based on the current allegations that any predicted
18 future harm is more than speculative.  *See Hodgers-Durgin*, 199 F.3d at 1044 (finding no "sufficient
19 likelihood of injury to warrant equitable relief" despite claim that the United States Border Patrol
20 had a practice of pulling over certain drivers without cause because, although both plaintiffs drove a
21 substantial amount, they had each been improperly stopped only once in ten years"); *Cf., Fortyune v.
22 Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) ("AMC maintains a written policy that
23 fails to ensure that wheelchair-bound patrons are able to sit with their companions when the
24 screening in question is soldout.  Fortyune's injury stems directly from this policy and, as a
25 consequence, is likely to recur.  The facts underlying his past injury demonstrate as much."); *City &
26 County of San Francisco v. Tutor-Saliba Corp.*, C 02-5286 CW, 2005 WL 645389, at *15-16 (N.D.
27 Cal. Mar. 17, 2005) (finding *Hangarter* distinguishable because the City alleged that "they face a
28 real threat that [defendant] will again bid for and obtain public works contracts from Plaintiffs by

using the same unfair business tactics they employed in connection with the Airport Contracts" based on the defendant's history of seeking such contracts frequently in the past).

The Court notes that some Plaintiffs are closer to stating plausible claims of standing than others. For example, the *Ansari* Plaintiffs state that they have purportedly incurred two debts, from Target and Capital One, to which ABC was assigned to collect. *Ansari* Compl., 11-3542, Docket No. 1, ¶¶ 28-29. They allege that law firm clients of ABC initiated two different lawsuits against them, and that in those suits, ABC filed three false proofs of service in 2010 and 2011. *Id.* ¶¶ 30, 32, 39, 43-44, 50, 59. The *Paule* Plaintiffs make substantially similar allegations, based on two purported debts and two allegedly false proofs of service in 2011. *Paule* Compl., 12-642, Docket No. 1, ¶¶ 46-47, 59, 73. With respect to those Plaintiffs who have already experienced the same unlawful conduct more than once, their claims of future harm appear more plausible. However, as explained above, Plaintiffs' allegations are still short of demonstrating a likelihood of future harm.

In addition, as currently pled, Plaintiffs admit they do not allege any basis for restitution. *See* Mot. at 8. Thus, Plaintiffs do not currently have standing to seek any form of relief under the UCL.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' UCL claims without prejudice. Plaintiffs may amend and attempt to assert a basis for their standing to seek either injunctive relief and/or restitution.

C.      Injunctive Relief for Other Claims

ABC also argues injunctive relief is not available for any of Plaintiffs' claims besides their UCL claims. Because the Court has concluded above that Plaintiffs have not sufficiently alleged standing to seek injunctive relief, such a ruling necessarily applies to any cause of action. However, Plaintiffs do not appear to request such relief for non-UCL causes of action in their complaints. Accordingly, the Court **DENIES as moot** Defendant's motion to dismiss Plaintiffs' claims for injunctive relief with respect to any non-UCL causes of action.

///

///

///

///

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motions to dismiss Plaintiffs' UCL claims without prejudice. Plaintiffs shall file any amended complaint within 30 days of the date of this order. As Plaintiffs have not sought injunctive relief pursuant to any non-UCL cause of action, the Court **DENIES as moot** Defendant's motion to dismiss Plaintiff's injunctive relief claims with respect to those causes of action.

IT IS SO ORDERED.

Dated: July 3, 2012

_____
EDWARD M. CHEN
United States District Judge